[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON COTERMINOUS PETITIONS
On March 20, 1989, the Commissioner of the Department of Children and Youth Services (hereinafter referred to as "DCYS") filed in this court coterminous petitions alleging that Monica C. is a neglected child and seeking to terminate the parental rights of the respondent Michelle C. (hereinafter referred to as "mother") in and to said child.
The neglect petition makes the following allegations: CT Page 1373
1. Said child would be denied proper care and attention physically, educationally, and emotionally.
2. She was permitted to live under conditions, circumstances or associations injurious to her well being; to wit:
(1) On January 2, 1989, mother requested placement of Monica citing frustration in caring for her daughter.
(2) On January 2, 1989, mother spent the entire day on the street with baby and only one bottle of formula. Baby was improperly dressed for the frigid temperature.
(3) On January 20, 1989 and January 28, 1989, New London Police Department were called to intervene in an argument between mother and maternal grandmother. On both occasions, mother was being asked to leave maternal grandmother's apartment.
(4) On February 7, 1989, mother was arrested for Criminal Trespass and Disorderly Conduct after refusing to leave maternal grandmother's apartment.
(5) Mother and boyfriend are currently living in an apartment from which she will soon be evicted. Future housing plans are undecided.
(6) Mother has exhibited emotional instability wherein she reacts violently and impulsively for little reason. Mother has been diagnosed as suffering from Tourette's Syndrome.
The petition for termination of parental rights as filed on March 10, 1989, makes the following allegation:
4. The child has been denied by reason of act or acts of commission or omission, the care, guidance or control necessary for his physical, educational, moral or emotional well being.
7. The previous reason(s) has/have existed for less than one year, but the totality of circumstances surrounding the child indicates that a waiver by the Court of the one-year requirement is in the best interest of the child.
The addendum attached to the petition for termination of parental rights makes the following allegations: CT Page 1374
Mother has Tourette's Syndrome and is prone to violence. There is a history of police involvement including two arrests for disorderly conduct, one for breach of peace and one for first degree criminal trespass.
Mother has exhibited poor judgment and a lack of parenting skills in caring for Monica. She has shown inconsistent interest and effort in improving her parenting skills.
Mother is intellectually limited and has been inconsistent in dealing with agencies involved in her case.
By motion dated December 7, 1989, the petitioner (DCYS) moved to amend the coterminous petition filed on March 20, 1989, in the matter of Monica C. to add the following facts, to wit:
 Since the filing of the coterminous petitions on March 20, 1989, up to July 26, 1989, the respondent, Michelle C., did not visit the child and did not maintain contact with the Department of Children and Youth Services and the child's foster parents.
That motion to amend was granted by the Court on December 14, 1989.
The statutory authority to petition for termination of parental rights is Connecticut General Statutes Section 17-43a(a) which provides in pertinent part:
 "In respect to any child committed to the commissioner of children and youth services in accordance with section 46b-129, either the commissioner, or the attorney who represented such child in the prior commitment proceeding, or an attorney appointed by the superior court on its own motion, or an attorney retained by such child after attaining the age of fourteen may petition the court for the termination of parental rights with reference to such child, including the right to petition the court for the revocation of the commitment of the child."
The statutory authority to terminate parental rights CT Page 1375 is Connecticut General Statutes Section 17-43a(b) which provides:
 "The superior court upon hearing and notice, as provided in sections 45-61d and 45-61f, may grant such petition if it finds, upon clear and convincing evidence, that the termination is in the best interest of the child and that, with respect to any consenting parent, such parent has voluntarily and knowingly consented to termination of his parental rights with respect to such child or that, with respect to any nonconsenting parent, over an extended period of time, which, except as provided in subsection (c) of this section, shall not be less than one year: (1) The child has been abandoned by the parent in the sense that the parent has failed to maintain a reasonable degree of interest, concern or responsibility as to the welfare of the child; or (2) the parents of a child who has been found by the superior court to have been neglected or uncared for in a prior proceeding have failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the child, they could assume a responsible position in the life of the child; or (3) the child has been denied by reason of an act or acts of parental commission or omission, the care, guidance or control necessary for his physical, educational, moral or emotional well being. Nonaccidental or inadequately explained serious physical injury to a child shall constitute prima facie evidence of acts of parental commission or omission sufficient for the termination of parental rights; or (4) there is no ongoing parent-child relationship, which means the relationship that ordinarily develops as a result of a parent having met on a day to day basis the physical, emotional, moral and educational needs of the child and to allow further time for the establishment or reestablishment of such parent-child relationship would be detrimental to the CT Page 1376 best interest of the child. If the court denies a petition for consent termination of parental rights, it may refer the matter to an agency to assess the needs of the child, the care the child is receiving, and the plan of the parent for the child."
I. Procedural Background
On April 4, 1989, upon hearing evidence, the Court (O'Connell, J.) granted the Commissioner's Motion for Temporary Custody in this matter. Because respondent mother failed to appear at that hearing, said order was entered without prejudice, thereby preserving her right for a full hearing. The Court also entered certain orders to secure respondent's presence at the hearings to follow or, at least, to verify that she was duly served. On July 11, 1989, upon finding that mother received notice by publication, a trial commenced. After hearing one witness, DCYS social worker Theresa Bohara, the court (Vasington, J.) continued the trial to July 18, 1989, appointed Attorney David Mandell to represent the mother, and entered certain orders in an attempt to secure her presence.
On July 18, 1989, mother appeared in court and agreed to submit to a psychological evaluation which was ordered by the court. The Court appointed Dr. David Mantell to conduct said evaluation. The Court asked Dr. Mantell to address the question of mother competency and continued the matter. Mother was notified on that date of the date, time and place of said evaluation.
On August 29, 1989, the court (Vasington, J.) declared a mistrial and appointed Attorney George Kennedy as guardian ad litem for the mother. (That action was taken to allow the completion of the psychological examination without having to return before a judge who was to be reassigned.)
On October 31, 1989, upon learning that mother failed to attend to the previously ordered evaluation, this Court renewed its order for psychological evaluation.
On December 14, 1989, this Court granted the petitioner's motion to amend to add certain factual allegations concerning mother's failure to maintain contact with her daughter and to allege an additional statutory ground for termination of parental rights, to wit, abandonment.
A trial was held on December 14, 1989, CT Page 1377 January 30, 1990 and May 8, 1990.
The petitioner presented evidence through Dr. David Mantell, clinical psychologist and court-appointed expert and DCYS social worker Theresa Bohara. The respondent testified on her own behalf. No further evidence was presented on behalf of the child.
II. Law
A. In General
Coterminous petitions are permitted under Connecticut General Statutes Section 17-43a(e) which provides in its relevant portion:
 Any petition brought by the commissioner of children and youth services to the superior court, pursuant to subsection (a) of section 46b-129, (i.e. neglect or uncared for) may be accompanied by a petition for termination of parental rights filed in accordance with this section with respect to such child, notwithstanding that such child has not been committed to the commissioner of children and youth services. . . The superior court, after hearing in accordance with the provision of subsection (b) of this section, may in lieu of granting the petition filed pursuant to section 46b-129, grant the petition for termination of parental rights as provided in section 45-61f.
In this situation, the same evidence is relevant to two different proceedings which are held simultaneously but are governed by two different standards of proof.
 In considering the termination of parental rights petition, although the trial court may not rely on the finding of neglect, the trial court may rely on the evidence that warranted a finding of neglect. In dealing with the neglect petition, however, the court views the evidence from a fair preponderance of the evidence standard whereas when dealing with the termination of parental rights petition the court views the same CT Page 1378 evidence, together with any other evidence presented, from a clear and convincing evidence standard.
In Re Juvenile Appeal (84-AB), 192 Conn. 254, 267 n. 13 (1984). (Emphasis in the original text.)
The controlling law in Connecticut on termination of parental rights as stated In Re Luis C., 210 Conn. 157,164-65 (1989), is as follows:
 "The termination of parental rights is defined as `the complete severance by court order of the legal relationship, with all its rights and responsibilities, between the child and his parent. . . .' General Statutes Sec. 17-32a(e) (Rev. to 1972) (now Sec. 45-61b(g)). Although that ultimate interference by the state in the parent-child relationship may be required under certain circumstances, the natural rights of parents in their children `undeniably warrants deference and absent a powerful countervailing interest, protection.' Stanley v. Illinois, 405 U.S. 645, 651, 92 S.Ct. 1208, 31 L.Ed.2d 551
(1972); see In re Appeal of Kindis, 162 Conn. 239, 240, 294 A.2d 316 (1972); Cinque v. Boyd, 99 Conn. 70, 82, 121 A. 678
(1923).' Anonymous v. Norton, 168 Conn. 421, 425, 362 A.2d 532, cert. denied, 423 U.S. 935, 96 S.Ct. 294, 46 L.Ed.2d 268
(1975). Termination of parental rights is `a most serious and sensitive judicial action.' Id., 430."
 "Section 17-43a carefully sets out. . . four situations that, in the judgment of the legislature, constitute `countervailing interests' sufficiently powerful to justify the termination of parental rights in the absence of consent. The commissioner of children and youth services, in petitioning to terminate those rights, must allege and prove one or more of the statutory grounds. In contrast to custody proceedings, in which the best interests of the child are always the paramount consideration and in fact usually dictate the outcome, in CT Page 1379 termination proceedings the statutory criteria must be met before termination can be accomplished and adoption proceedings begun. No all-encompassing `best interests' standard vitiates the requirement of compliance with the statutory criteria. See Alsager v. District Court of Polk County, (406 F. Sup. 10 (S.D.Iowa 1975), aff'd, 545 F.2d 1137
(8th Cir. 1976)); In re Adoption of Children by D., 61 N.J. 89, 293 A.2d 171
(1972); Malpass v. Morgan, 213 Va. 393, 192 S.E.2d 794 (1972); Ketcham Babcock, `Statutory Standards for the Involuntary Termination of Parental Rights,' 29 Rutgers L.Rev. 530, 539 (1976); comment, `Termination of Parental Rights in Adoption Cases: Focusing on the Child,' 14 J. Fam. L. 547, 550 (1975). In re Juvenile Appeal (Anonymous), 177 Conn. 648, 671-72, 420 A.2d 875 (1979)."
The two phase process concerning neglect petitions and termination petitions, i.e. the adjudicative and dispositive phases, prescribed by Practice Book Sections 1039 through 1042, and 1049, requires the court to adopt the following three-step inquiry:
 First, the court must decide if there is a preponderance of evidence, based upon facts existing on the date the petition was filed, or amended, to support the conclusion that the child was neglected on that date. . .
 Second, if the court finds that the child was neglected as of the date of filing, it must then consider whether the facts provide clear and convincing evidence that statutory grounds exist for terminating parental rights. If no such ground exists, the termination petition is dismissed and disposition must be entered based upon evidence of facts existing on the last day of trial. . .
 Third, if the Court finds that grounds do exist to terminate parental rights. . . it must then consider whether there is clear and convincing evidence CT Page 1380 that termination serves the child's best interest based upon facts existing as of the last hearing date, and after consideration of the six factors enumerated in subsection (h) of Sec. 45-61f.
In Re Jose Ro, 1 Conn. Super. Ct. Reptr. 733-34 (Sup.Ct. for Juv. Matters, Hartford-New Britain, Sept. 9, 1986) (Brenneman, J.) See also In Re Christine F., 6 Conn. App. 360, 361 (1986). In Re Juvenile Appeal, 188 Conn. 259 (1982).
III. The Neglect Petition (As of December 14, 1989)
The neglect petition originally filed on March 20, 1989, alleges that the child is "neglected" on the ground that she "would be denied proper care and attention physically, educationally and emotionally" and that the child "was permitted to live under conditions, circumstances or associations injurious to her well being." On December 14, 1989, the court granted the petitioner's motion to amend which added the ground of abandonment and factual allegation of failure to visit the child or to maintain contact with DCYS. The petitioner claims that the facts existing on the date the petition was amended (December 14, 1989) proves one or more of the statutory grounds alleged as a basis for neglect.
Those claims will be discussed seriatim.
A. Abandonment
Connecticut General Statutes Section 17-43a(b)(1) defines this ground as the parent's failure to "maintain a reasonable degree of interest, concern or responsibility as to the welfare of the child."
The standard of review for a claim of abandonment was established In Re Juvenile Appeal (No. 9489), 183 Conn. 11,14-15 (1981) as follows:
 "Abandonment focuses on the parent's conduct. It is a question of fact for the trial court `which has the parties before it and is in the best position to analyze all of the factors which go into the ultimate conclusion that (the statutory standard of abandonment) has been satisfied.' In re Adoption of Webb, 14 Wash. App. 6751, 657, 544 P.2d 130 (1975). CT Page 1381
 In re Adoption of Webb, supra, the court found that the father had abandoned the child `under circumstances showing a wilful substantial lack of regard for parental obligations.' The court stated as follows: `The commonly understood general obligations of parenthood entail these minimum attributes: (1) express love and affection for the child; (2) express personal concern over the health, education and general well being of the child; (3) the duty to supply the necessary food, clothing, and medical care; (4) the duty to provide an adequate domicile; and (5) the duty to furnish social and religious guidance."'
It is not necessary for all five attributes to be proven in order for a finding of abandonment to be made.
The petitioner makes the following argument in support of the claim of abandonment.
 One of the definitions of neglect is abandonment. The term abandonment is not further defined in the neglect context. Abandonment is a ground for the removal of a parent as a guardian by the Probate Court pursuant to Connecticut General Statutes Section 45-44c(2). It is also a ground for termination of parental rights pursuant to Connecticut General Statutes Section 17-43a(b)(1) and 45-61(f)(1). These three provisions define abandonment in an identical language, namely that:
 "The parent has failed to maintain a reasonable degree of interest, concern or responsibility as to the welfare of the child."
 In the termination context, abandonment focuses on the parental conduct and is a question of fact to be resolved on the basis of the relevant circumstances. In a case of a noncustodial parent consideration is given to the parent's visitation and other type of contact with the child. In this instant case mother's record of visits, telephone CT Page 1382 contact and lack of acknowledgement of her daughter's birthday, which should be considered an "expression of interest, concern or responsibility,. . . were too infrequent to rebut the otherwise convincing proof that she had abdicated her parental responsibilities." In Re Shannon S., 41 Conn. Sup. 145, 152 (1989).
 Under the required standard of fair preponderance of the evidence, the court should have no problem in finding that abandonment has been proven for the purpose of neglect adjudication. When mother resided with maternal grandmother in New London, she lived one block away from the child's foster home. DCYS moved the child from Colchester to New London to allow for increased visitation with mother. See Exhibits C, p. 4; Exhibit H, p. 1. Testimony of Theresa Bohara on January 30, 1990. Mother was unable to take advantage of this and her visitations remained sporadic with no improvement of the poor quality of interaction with the child. Subsequently, she removed herself far away from the child's placement thereby making it more difficult to maintain any meaningful contact with Monica.
The Court is not persuaded by that argument. The Court finds that the petitioner has failed to prove by a fair preponderance of the evidence that mother has not expressed love and affection for the child, that mother has not expressed personal concern for the health, education and general well being of the child, that mother has failed the duty to supply the necessary food, clothing and medical care. Considering the age of the child, there has been no evidence regarding the duty to furnish social and religious guidance. In April 1989, the petitioner suspended visitation by the mother until July or August of 1989. This suspension was due to a concern by the foster mother that mother may have had lice. No credible evidence has been presented that mother, in fact, did suffer from lice during the period of suspension. Petitioner cannot now claim that mother's lack of visits during the period of suspension can be used as a basis for a finding of abandonment. The Court concludes that the petitioner has failed to prove abandonment in this case. The Court further concludes that mother has maintained a reasonable degree of interest, concern or responsibility as to CT Page 1383 the welfare of the child.
 B. Denial of Proper Care and Attention: Permitted to Live under Injurious Conditions
The petitioner makes the following argument regarding these two grounds:
 With respect to the ground of denial of proper care and attention, mother's own admission suffices to substantiate a finding by fair preponderance of the evidence. Mother stated that since the placement of the child until recently she was unable to parent her child emotionally and financially. These statements along with the nature of "care" which mother provided prior to Monica's placement, see Exhibits C and H, lead to the inescapable conclusion that the record contains more proof than needed to substantiate a neglect adjudication under this ground as well as the ground of "permitted to live under injurious conditions." Section 46b-120 defines "neglected" in part as:
 (ii) His being denied proper care and attention, physically, educationally, emotionally or morally; or (iii) is being permitted to live under conditions, circumstances or associations injurious to his well-being.
The Court finds the following additional facts regarding these two claimed statutory grounds.
Monica was born December 21, 1988, at the Lawrence and Memorial Hospital in New London, Connecticut. Mother received early prenatal care as a result of her involvement with the Department of Mental Retardation and reports indicate a healthy pregnancy. Monica has been in foster care placement since January 4, 1989, when she was placed in a foster home. Monica was placed in foster care following a phone call from mother on January 2, 1989 to Care Line requesting placement of her daughter stating that her daughter was "crying a lot" and that she (mother) was frustrated with caring for her. The Court finds that the allegations that on January 2, 1989, mother spent the entire day on the street with Monica and only one bottle of formula with Monica being improperly dressed for the frigid temperature has not been CT Page 1384 proven by a fair preponderance of the evidence. The Court finds that DCYS has failed to prove by a fair preponderance of the evidence that as of the date of placement of Monica (January 4, 1989) that the child was being denied proper care and attention physically, educationally, emotionally or morally and that petitioner has also failed to prove that as of January 4, 1989, the child was being permitted to live under conditions, circumstances or associations injurious to her well being. The Court finds that since placement, the child has been receiving proper care and attention, physically, educationally, emotionally and morally and that since placement, the child was living under conditions, circumstances or associations that were not injurious to her well being.
The Court therefore concludes that the petitioner has failed to prove by a fair preponderance of the evidence either of the three grounds alleged as a basis for neglect.
IV. The Termination Petition
The threshold question to the termination petition is the petitioner's request that the Court waive the one-year requirement found in Section 17-43a(c). That section provides that the Court may waive the requirements that one year expire prior to the termination of parental rights if it finds from the totality of the circumstances surrounding the child that such a waiver is necessary to promote the best interests of the child.
No purpose would be served in determining if grounds for termination exist under Section 17-43(a) if it is determined that the one-year requirement should not be waived.
In requesting that the Court waive the one-year requirement, the petitioner makes the following argument.
 Connecticut General Statutes Section 17-43a(c) empowers the court to "waive the requirement that one year expire prior to the termination of parental rights if it finds from the totality of the circumstances surrounding the child that such a waiver is necessary to promote the best interest of the child." See also Connecticut General Statutes Section 45-61f(g).
 Based on the above analysis of the grounds for termination and the discussion CT Page 1385 below concerning the six statutory factors, this Court should:
 Conclude by clear and convincing evidence that (mother) is (not) able or capable now or in the future to provide even the most basic essential structure necessary for the care and protection of (the child). To delay action by this Court in terminating parental rights is to delay the inevitable at a very crucial time in this young child's life. . .
 In Re Christine F., 6 Conn. App. 360, 371
(1986).
A. Totality of Circumstances
The Court makes the additional following findings of fact regarding the totality of circumstances surrounding the child and the best interest of the child.
Dr. Mantell, a qualified psychologist, was appointed by the Court to evaluate mother. This evaluation took place on November 14, 1989. The evaluation consisted of a psychological examination with competency evaluation in connection with pending juvenile court proceedings. At the time of the evaluation, mother was found to be mentally disabled, not competent to participate in a trial, and in need of a guardian. She was found to be generally orientated in personal and current information as well as to time and place. Her mental control was within average limits. Her logical memory appeared to be impaired by her propensity to confabulate more so than because of deficiency alone. Mother was found to be a weak personal historian. Her demeanor was controlled and her mood was calm. She appeared to regard herself as possessing a mentally retarded status. Mother thought she would be able to care for the child when the child was two years of age and wanted him in foster care until that time. Mother also wanted professional help for psychiatric care because she had been doing a lot of drugs. No such psychiatric care was ever. offered to her by the petitioner. Mother also related to the psychologist that she feels she needs training to get a job, find a place to live, and to handle her mother as well as training to become a good mother herself. The summary of the psychologist is as follows.
Michelle Comeau was seen for psychological and competency examination with findings indicating a marginal, EMR status cognitively with a higher functional potential and CT Page 1386 with what she describes as A borderline, dysfunctional psychosocial adjustment, chronic. It is possible that Michelle's fragile status has been destabilized by her history of substance abuse and sexual promiscuity. The possibility of an underlying thought disorder cannot be ruled out and she should be followed clinically for the psychotic process she is now reporting. At the present time, she does not possess the capacities that would enable a competent presentation in connection with Court hearings. It is for this reason that the assistance of a guardian is recommended.
In arguing for a waiver of the one year period, the petitioner claims that there are acts of commission or omission by mother, arguing that the acts relevant to this case are primarily acts of omission consisting of the conduct of mother to voluntarily relinquish custody and place the child with DCYS, such acts involving maltreatment of a newborn infant such as dressing Monica in light clothing and taking her outside in a frigid cold January temperature or not having sufficient formula. The Court finds that none of the acts in question have been proven by DCYS by clear and convincing evidence other than voluntarily placing the child with DCYS. The Court finds that the petitioner has failed to prove by clear and convincing evidence that mother denied Monica the care, guidance or control necessary for the child's physical well being.
B. Factors Enumerated in Section 17-43a(d)
 1. The timeliness, nature and extent of services offered or provided to the parent and the child by an agency to facilitate the reunion of the child with the parent.
The treatment plan dated December 28, 1988, under goals indicated that the goal was for mother to become a knowledgeable and appropriate parent. Under expectations, it indicates two expectations: (1) mother will learn appropriate parenting skills; and (2) mother will become independent of her mother and establish her own residency. Under steps, services of department, there were five steps indicated.
1. Cooperate with the area service providers involved with her family and DCYS social worker.
2. Apply for low-income housing in New London and surrounding areas.
3. Follow through with all medical appointments for CT Page 1387 the baby and herself.
4. Apply for social security benefits
5. Worker will coordinate area services and make weekly visits to the family.
The service agreement entered into between mother and DCYS dated July 18, 1989, which was to terminate on October 18, 1989, indicates that DCYS was to supervise visitation and maintain contact with mother/foster home.
There is no evidence that DCYS provided to mother any training to obtain a job, or any assistance to find a place to live. In discussing the timeliness, nature and extent of services offered by DCYS to mother, DCYS points to parent/aide and visiting nurse services that were offered. DCYS failed to offer any services to provide mother with any job training skills or to assist mother in obtaining adequate housing. DCYS also claims that the first service to facilitate reunion was the initial attempt to avoid placement. The Court finds from the evidence presented that DCYS has failed to prove that there was any attempt on its part to avoid placement.
 2. The terms of any applicable court order entered into and agreed upon by any individual or agency and the parent and the extent to which all parties have fulfilled their obligation under such order.
DCYS claims that mother violated the court-ordered psychological evaluation entered on July 18, 1989 and scheduled to be conducted on July 26, 1989. From the evidence presented, the Court finds that mother did voluntarily submit to the psychological evaluation which was conducted on November 14, 1989. DCYS also claims that mother violated all of the obligations contained in the service agreement. The Court finds that mother also complied with that portion of the service agreement requiring her to sign a release of information regarding her psychological evaluation conducted by Dr. Stern at the Norwich State Hospital. While mother did miss some of her visitation, she also was able to make some of her visits.
 3. The feelings and emotional ties of the child with respect to his parent, his guardian of his person and any other person who has exercised physical care, custody or control of the child for at CT Page 1388 least one year and with whom the child has developed significant emotional ties.
The Court finds from the evidence presented that mother does love her daughter and is committed to regain custody of her daughter. Petitioner has failed to prove by clear and convincing evidence whether there is any emotional ties on behalf of Monica towards her mother. DCYS claims that during the occasions when mother visits the daughter, that the contact with the child is minimal, claiming that mother does not properly initiate contact or interreact with the child unless reminded or encouraged and even then the child will terminate contact by leaving mother without mother's attempt to prolong contact. DCYS further claims that during most of the visit that mother would not pay attention to Monica who would cling to the foster mother. DCYS further claims that Monica does not know her mother. The Court finds that none of the above claims have been proven by clear and convincing evidence and therefore rejects those claims.
4. The age of the child.
Monica was born December 21, 1988.
 5. The efforts the parent has made to adjust his circumstances, conduct, or conditions to make it in the best interest of the child to return him to his home in the foreseeable future including but not limited to:
 (A) The extent to which the parent has maintained contact with the child as part of an effort to reunite the child with the parent, provided that the court may give weight to incidental visitations, communications or contributions and (B) the maintenance of regular contact or communication with the guardian or other custodian of the child.
DCYS further claims that mother has made no progress and made no effort to adjust her circumstances to give any ray of hope of a realistic outlook of rehabilitation. DCYS points to the testimony of Dr. Mantell to the effect that only institutionalization for a considerable time measured by years would provide a hopeful rehabilitation. The Court finds that that testimony is not credible and therefore rejects it. DCYS also makes the following claims: CT Page 1389
 Unfortunately, mother's condition does not rise to the level which may entitle her to such service on voluntary or nonvoluntary basis.
In discussing the legal implication of mother's mental status, DCYS states in part as follows:
 This conduct may be attributed in whole or in part to mother's intellectual and psychological condition. As indicated above, mother is not considered mentally retarded and does not qualify for DMR's services (Department of Mental Retardation). She does not appear to rise to a level which would qualify her for involuntary services of DMR or DMH (Department of Mental Health). Mother's psychological and emotional profile was articulated in Dr. Mantell's evaluation and testimony and is consistent with the previous evaluation of Dr. Monahan. The issue is not whether or not mother's mental status gives rise to the level that may entitle her to services on a voluntary or nonvoluntary basis through either the Department of Mental Retardation or the Department of Mental Health. It is clear that mother is in need of some form of hospitalization for some period of time in order to be able to properly care for the child. The petitioner cannot claim that mother's condition does not rise to a level which would qualify her for involuntary services by the Department of Mental Retardation or the Department of Mental Health at the same time claimed that mother has not made adequate efforts to adjust her circumstances to make it in the best interests of the child to return home to her where the petitioner has made no effort to provide mother with the type of rehabilitative services that she is in need of.
Dr. Mantell testified, and the Court finds as a matter of fact based on that testimony, that mother's mental and emotional capacity are borderline and she is an educably mentally retarded pe person. Dr. Mantell testified, and the Court finds as a matter of fact, based on clear and convincing CT Page 1390 evidence that while mother's deficient intelligence impaired her ability to care for Monica, that a parent with such a deficiency may overcome her limits and provide care for a young child. Mother is in need of an institutional treatment which DCYS has never provided to her.
In considering the efforts that mother has made to adjust her circumstances, conduct or conditions, it is necessary to consider mother's limited mental capacity and the fact that she is in need of institutional treatment which has never been provided to her by DCYS.
The Court would note that in rejecting portions of Dr. Mantell's opinion, the Court has considered the fact that Dr. Mantell never saw the child or the foster home and that he assumed that when asked to testify in termination matters that there must be a strong case for termination. The Court rejects that assumption on his part. The Court concludes that DCYS has failed to prove by clear and convincing evidence that would be necessary to institutionalize mother for a considerable period of time measured by years in order to provide a hope for her rehabilitation.
 6. The extent to which a parent has been prevented from maintaining a meaningful relationship by the unreasonable act or conduct of the other parent of the child, or the unreasonable act of any other person or by the economic circumstances of the parent.
In April of 1989, the petitioner suspended visitation by the mother until July or August of 1989 due to a concern by foster mother that mother may have had lice. No credible evidence has been presented that mother did, in fact, did suffer from lice during this period of suspension. This period of suspension totally eliminated any attempt by mother to have any meaningful relationship with the child during the period of suspension. In view of the fact that no credible evidence has been presented that mother did, in fact, have lice during the suspension period, the Court concludes that mother was prevented from maintaining a meaningful relationship during the period of suspension by the unreasonable acts of DCYS.
The Court concludes from the totality of the circumstances surrounding Monica that a waiver of the one-year requirement is not necessary to promote the best interest of the child. Accordingly, the Court rejects the request for the waiver. CT Page 1391
The Court further finds that the petitioner has failed to prove by clear and convincing evidence either abandonment (17-43a(b)(1) or denial by act of commission or omission (17-43a(b)(3).
ORDER
(1) The neglect petition is denied.
(2) The request for waiver of the one-year requirement is denied.
(3) The termination of parental rights petition is denied.
AXELROD, J.