## In re Christine F.*
### (3814)
### (4375)

HULL, BORDEN and DALY, Js.

Argued December 11, 1985—decision released March 4, 1986

*James W. Auwood,* for the appellant (mother of the minor child).

*Barry J. Ward,* for the appellant (father of the minor child).

*Judith M. Earl,* assistant attorney general, with whom, on the brief, was *Joseph I. Lieberman,* attorney general, for the appellee (department of children and youth services).

*Jefferson Hanna III,* for the minor child.

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 2026, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

BORDEN, J. These are the combined appeals of two parents from the trial court's judgment terminating parental rights in their five year old daughter. Both challenge the sufficiency of the evidence upon which the judgment is based. In addition, the mother assigns as error the trial court's failure to make adequate written findings pursuant to General Statutes § 17-43a (d). The father assigns as error the trial court's conclusion that the best interest of the child warrants a waiver of the requisite one year waiting period mandated by General Statutes § 17-43a (b) and (c). The father also claims that the trial court's judgment violates the public policy of this state.[1] We find no error.

Between January and July, 1984, the department of children and youth services (DCYS) received four referrals concerning this child, who is the youngest of three children of these divorced parents. Both of the other two children had been adjudicated neglected and committed to the custody of DCYS at separate times in the past. On July 23, 1984, DCYS received a sexual abuse referral from a social worker at a Norwich hospital where the child had been physically examined. The child was admitted to the hospital and, the following day, DCYS initiated coterminous child neglect and parental termination petitions and obtained an order of temporary custody. See General Statutes §§ 17-38a, 46b-129 (temporary custody) and 17-43a (e) (coterminous petitions). Because the present appeals are from the judgment of termination of parental rights, we will not further address the adjudication of neglect other than to note that the trial court made the requisite preliminary finding that the child was uncared for and neglected. See *In re Juvenile Appeal (84–AB)*, 192 Conn. 254, 267, 471 A.2d 1380 (1984).

---

[1] Counsel for the child did not file a separate brief but appeared at oral argument and endorsed the position of the department of children and youth services in these appeals.

The parental termination petition alleged, pursuant to General Statutes §§ 45-61f (f) (2) and 17-43a (b) (3), that the child has been denied by reason of an act or acts of parental commission or omission, the care, guidance or control necessary for her physical, educational, moral or emotional well-being.[2] In addition, the termination petition alleged, pursuant to General Statutes § 17-43a (c), that the stated reason for termination of parental rights has existed for less than one year but that the totality of the circumstances surrounding the child indicate that a waiver by the court of the one year requirement is in the best interest of the child. The particulars alleged in the petition include that the child has been sexually molested on more than one occasion, including July 23, 1984, and that the mother has been unable to protect the child from sexual molestation. It was also alleged that the mother is unable to control the child's behavior, that she threatens the child and yells obscenities at her, and that both parents are intellectually limited.

On November 15, 1984, the trial court issued a memorandum of decision, finding by clear and convincing evidence that the child was uncared for and neglected, that the child has been abandoned by both parents in the sense that each parent has failed to maintain a reasonable degree of interest, concern or responsibility for her welfare,[3] and that the child has been denied, by reason of acts of both parental commission and omission,

---

[2] Although the parental termination petition was filed pursuant to the provisions of both §§ 17-43a and 45-61f, we note that the pertinent provisions of those two statutes are identical. Therefore, the allegations in the petition do not give rise to any distinct or separate statutory treatment. For purposes of clarity, all statutory references in this opinion are to General Statutes § 17-43a.

[3] Because we find that the trial court did not err in terminating parental rights on the basis of General Statutes § 17-43a (b) (3), we do not further consider the propriety of the court's conclusion, pursuant to § 17-43a (b) (1), that the child has been abandoned.

the care, guidance and control necessary for her physical, educational, moral and emotional well-being. The court also found that the totality of the circumstances surrounding the child warrants a waiver of the requisite one year period as provided in General Statutes § 17-43a (b) and (c). Finally, the court found that termination of parental rights was in the best interest of the child. Accordingly, the trial court rendered judgment terminating the parental rights of both parents, and appointed the commissioner of DCYS as statutory parent for the purpose of placing the child for adoption.

I

The issues raised by the respondents in this appeal focus our attention upon the requirements of General Statutes § 17-43a (b), (c) and (d).[4] Because the issue raised by both parents regarding the sufficiency of the evidence upon which the judgment is based; General Statutes § 17-43a (b); overlaps with the claims of the mother regarding the adequacy of the court's written findings; General Statutes § 17-43a (d); and the claim of the father regarding violations of public policy; General Statutes § 17-38a (a); these issues will be addressed together.

The evidence presented during the two days of hearings included the testimony of a hospital pediatrician, a psychologist, who evaluated the family members for purposes of these proceedings, two DCYS case work-

---

[4] Pursuant to the statutory scheme, the trial court may grant a petition to terminate parental rights according to the following prescribed conditions: (1) if the court finds by clear and convincing evidence that at least one of the four grounds enumerated in subsection (b) exists; (2) if this ground has existed for at least one year, except where circumstances warrant a waiver of this requirement pursuant to subsection (c); and (3) if the court's subordinate findings are reduced to writing and reflect the court's consideration of the six factors enumerated in subsection (d). The trial court must also find that termination of parental rights is in the best interest of the child pursuant to § 17-43a (b). See General Statutes § 17-43a (b), (c), (d).

ers, a neighbor who has been acquainted with the family members for a number of years, the child's father and a foster mother. Documentary evidence introduced at trial included hospital records, the psychologist's written report and the written reports of the DCYS case workers. On the basis of this evidence, the trial court found that both parents are of borderline mental ability. The mother was found to experience difficulty coping with moderate disruptions and is easily overwhelmed by problems. Her own needs take priority. She is easily frustrated to a high degree. She has a live-in boyfriend with whom she fought and argued violently; she experienced beatings from this man and would transfer her frustrations into verbal assaults upon the child. She lived for a period of time in a one room apartment with rabbits, cats and dogs; the animals were allowed to void in this room. A neighbor had taken the child to live with her on some twenty occasions for days at a time, once extending to a period of three months. The court also found that the father has an alcohol problem and has difficulty caring for his own needs. The child was found to have been exposed to inappropriate sexual activity and the father was found to have been involved as a participant in that activity. On appeal, both parents claim that these latter findings regarding sexual activity and the father's participation in it, in particular, are not supported by clear and convincing evidence. The mother has raised this issue because this finding is one of the predicates to the finding that she is unable to protect the child from further abuse.

The pediatrician who examined the child testified that he observed peripheral irritation in the vaginal and perineal area and a one centimeter opening in the center of the hymenal ring which indicated a possibility of manipulation. He further testified that during the course of the examination, the child made statements

to him which indicated that the father had fondled her. These statements were consistent with the physical condition that the pediatrician observed. On cross-examination, the pediatrician testified that he was unable to formulate an opinion that it was more probable than not that the child's condition was related to sexual abuse. He also testified that a child can be touched in a sexual manner without showing any physical results of that touching.

The evaluating psychologist testified that the child's reactions during testing "really indicated" to him that there had been sexual abuse. On cross-examination, he testified that the child's test responses did not identify the father, as opposed to the mother's boyfriend, as the cause of the abuse. The child did, however, exhibit strong negative reactions to the father which the psychologist observed.

On appeal, the parents argue that because this expert testimony did not exclude, to a reasonable degree of medical probability, the hypothesis that the child's injuries were accidental, the evidence was legally insufficient to establish the cause of the sexual abuse. This argument is unavailing for several reasons.

First, it erroneously assumes that this evidence was the only available evidence regarding the causation of sexual abuse. Our review of the record indicates that the child made statements to the foster mother and the neighbor which indicated that the father had inappropriately touched her. In addition, the neighbor found pornographic pictures in the child's possession which the child stated her father had given her. The child made similar statements to a DCYS case worker. Thus, the available evidence allowed the trial court, as the finder of fact, to draw inferences which were consistent with either culpability or innocence on the part of the father. The trial judge, in such a situation, is not

required to select those inferences which favor one finding over the other; *State* v. *Dumlao,* 3 Conn. App. 607, 616, 491 A.2d 404 (1985); merely because the clear and convincing evidence standard of proof is greater than the civil preponderance standard. See id. "The rule is that the [trial court's] function is to draw whatever inferences from the evidence or facts established by the evidence it deems to be reasonable and logical." Id., 616–17. We find no error in the reasoning or logic of the trial court based upon the totality of the evidence.

Second, the parents' claims of error regarding the sufficiency of the evidence unduly emphasize the weight to be accorded the failure of the physician and psychologist to formulate opinions as to the cause of the sexual abuse. The fact that those experts did not formulate opinions as to the ultimate issue of causation is undoubtedly significant. This fact alone does not, however, render the balance of their entire testimony meaningless to the trier of fact, especially where that testimony was based on personal knowledge obtained by direct observations and statements of the child during examination. Indeed, the testimony of these two witnesses clearly establishes that sexual abuse had occurred, and the psychologist's opinion to that effect is beyond dispute. See *In re Theresa S.,* 196 Conn. 18, 28, 491 A.2d 355 (1985).

The parents' challenge to the sufficiency of the evidence regarding the cause of that abuse essentially amounts to a claim "that direct evidence as to any acts of commission [on the part of the father] or omission [on the part of the mother] was lacking and that the judgment rested upon speculation and inference." *In re Juvenile Appeal (85-2),* 3 Conn. App. 184, 192–93, 485 A.2d 1362 (1985). We eschew these attempts to minimize the overall impact of the totality of the evidence, whether direct or circumstantial, upon the trier of fact. Id., 193. "It is not our function to retry the case

or to pass upon the credibility of the witnesses; *Johnson v. Flammia,* 169 Conn. 491, 497, 363 A.2d 1048 (1975); and we will not. Our review of the evidence indicates that the findings of the court were amply supported by the evidence." Id.

Although the trial court's findings regarding sexual abuse and the cause of that abuse are the primary targets of the respondents' appeals, the issue regarding the adequacy of other findings has also been raised. As previously indicated, General Statutes § 17-43a (d) requires that written findings pertaining to six enumerated factors be made by the court in rendering judgment terminating parental rights. Our review of this issue is limited to the claims of the mother as raised and discussed in her brief. See *Travelers Ins. Co. v. Henderson,* 1 Conn. App. 409, 411 n.3, 472 A.2d 356 (1984). In this regard, the specific statutory requirements, which the mother claims the court did not adequately address, are set forth in General Statutes § 17-43a (d) (1), (3), (5) and (6).

Subsection (d) (1) of the statute requires the court to consider "[t]he timeliness, nature and extent of services offered or provided to the parent and the child by an agency to facilitate the reunion of the child with the parent." The mother's claims regarding the trial court's memorandum are twofold: (1) that the evidence indicated that DCYS made no effort to facilitate a reunion; and (2) that DCYS, therefore acted contrary to the public policy of this state. See General Statutes § 17-38a (a).[5] Since this latter claim overlaps with the father's public policy argument, they will be addressed together.

---

[5] General Statutes § 17-38a provides in pertinent part: "The public policy of this state is: To protect children whose health and welfare may be adversely affected through injury and neglect; to strengthen the family and to make the home safe for children by enhancing the parental capacity for good child care; to provide a temporary or permanent nurturing and safe

With regard to the adequacy of the trial court's finding, it is clear from the record that the court took into consideration the extent and duration of this family's history of contacts with DCYS. The memorandum of decision states that there is a history of the parents' inability and incompetence to care for or parent their children. In addition, the court noted that DCYS, through its agents and employees, had been involved with the parents and this particular child since 1980. The court specifically found that DCYS had in the past made attempts to buttress the home while the child was in the custody of the mother. These findings were adequately set forth in the trial court's memorandum and fully comply with the statutory requirements.

The parents' attacks upon the action of DCYS and the findings of the trial court, based on the alleged violation of the public policy of this state as set forth in General Statutes § 17-38a (a), are also unavailing. "The primary concern of DCYS is the safety of [the child]. Family integrity can be the goal of DCYS only when such a reunion will not endanger the safety of the child. 'Where *appropriate,* the agency can and must take unilateral action *either* to reunite families *or* to terminate parental rights as expeditiously as possible to free neglected children for placement and adoption in stable family settings.' " (Emphasis in original.) *In re Juvenile Appeal (84-AB),* 192 Conn. 254, 258, 471 A.2d 1380 (1984). The parents' claim that the action of DCYS violates public policy overlooks the fact that this action is statutorily prescribed; General Statutes § 17-43a (e); in such cases where DCYS may deem it "appropriate." *In re Juvenile Appeal (84-AB),* supra; see also *State* v. *Anonymous,* 179 Conn. 155, 425 A.2d 939 (1979). In the present case, the evidence clearly indicates that the

environment for children when necessary; and for these purposes to require the reporting of suspected child abuse, investigation of such reports by a social agency, and provision of services, where needed, to such child and family."

determination by DCYS of the appropriateness of this action was not based upon an immediate or spontaneous decision. As the trial court aptly noted, DCYS had been extensively involved with these parents for many years and had made efforts to buttress the family. These findings are amply supported by the evidence and are consistent with the public policy of " '[freeing] neglected children for placement and adoption in stable family settings.' " *In re Juvenile Appeal (84–AB),* supra.

General Statutes § 17-43a (d) (3) requires the court to consider "the feelings and emotional ties of the child with respect to [her] parents . . . ." The trial court found that there exists a loving relationship between the mother and the child. The child, however, was found not to have any affection for the father. Notwithstanding the positive relationship between the mother and child, the trial court noted that it is obvious that neither parent in this case, even with the most structured outside guidance and buttressing, would be able effectively to care for or protect the child adequately. With regard to the mother's claim on appeal that the trial court failed to make these specific written findings, the memorandum of decision speaks for itself and speaks to the contrary.

The respondent mother claims that the court failed to give the appropriate weight to its findings as to this factor. We find no support for this claim in the record. Admittedly, the finding regarding this statutory factor is inconsistent with the ultimate conclusion to terminate the mother's parental rights. Nevertheless, the fact that the legislature has "[interpolated] objective guidelines into the open-ended fact-oriented statutes which govern [parental termination] disputes"; *Seymour* v. *Seymour,* 180 Conn. 705, 710, 433 A.2d 1005 (1980); should not be construed as a "predetermined weighing of evidence"; *Yontef* v. *Yontef,* 185 Conn. 275, 282, 440 A.2d 899 (1981); by the legislature. Where, as here,

the record reveals that the trial court's ultimate conclusions are supported by clear and convincing evidence, we will not reach an opposite conclusion on the basis of any "one segment of the many factors considered in a termination proceeding . . . ." *In re Theresa S.,* supra, 25.

General Statutes § 17-43a (d) (5) requires the court to consider, inter alia, "the efforts the parent has made to adjust his circumstances, conduct, or conditions to make it in the best interest of the child to return [her] to [her] home in the foreseeable future . . . ." The trial court specifically found that neither parent has made these requisite adjustments and the language of its finding tracks this statutory factor verbatim. Thus, it is in complete conformity with the statutory mandate. It is also amply supported by the evidence.

General Statutes § 17-43a (d) (6) requires the court to consider "the extent to which a parent has been prevented from maintaining a meaningful relationship with the child by the unreasonable act or conduct of the other parent of the child, or the unreasonable act of any other person or by the economic circumstances of the parent." Although the respondent mother claims that this factor was not considered, the trial court's memorandum of decision indicates otherwise. As previously indicated, the court considered the prior history and the efforts of DCYS and there is no indication in the record that the agency acted unreasonably. To the extent that the mother now claims that she was prevented from maintaining a meaningful relationship with the child either by virtue of the father's conduct or her economic circumstances, we note that the first claim was not raised at trial. Nor was there proof that the father interfered with her relationship with the child. The second claim merely makes reference to two statements in the transcript as evidence that she is a recipient of social security and that she was once

evicted from her apartment. "The [respondent mother] . . . has presented this court with nothing but suppositions and allegations to support this claim. She would have us believe that her rights were terminated solely because she was poor. The [respondent's] parental rights were terminated on the basis of her actions and omissions, not her economic situation." *State* v. *Anonymous,* supra, 168.

## II

The father also assigns as error the trial court's decision to waive the one year statutory time period which is required pursuant to General Statutes § 17-43a (b) as a condition to termination of nonconsenting parents' rights. We disagree.

According to General Statutes § 17-43a (c), "[t]he court may waive the requirement that one year expire prior to the termination of parental rights if it finds from the totality of the circumstances surrounding the child that such a waiver is necessary to promote the best interest of the child." In the present case, the trial court ruled that "[t]he court must conclude by clear and convincing evidence that neither parent is able or capable now or in the future to provide even the most basic essential structure necessary for the care and protection of [the child]. To delay action by this Court in terminating parental rights is to delay the inevitable at a very crucial time in this young child's life. The Court finds [from] the totality of the circumstances surrounding the child that [a] waiver of the requirement that one year expire prior to the termination of parental rights is necessary to promote the best interest of the child."

" 'We do not examine the record to determine whether the trier of fact could have reached a conclusion other than the one reached. Rather, we focus on the conclusion of the trial court, as well as the method

by which it arrived at that conclusion, to determine whether it is legally correct and factually supported.' " *In re David E.,* 4 Conn. App. 653, 656, 496 A.2d 229 (1985). It is readily apparent from the quoted language of the trial court's memorandum of decision that the court carefully considered each aspect of the statutory provisions pertaining to waiver of the one year waiting period. "Our review of the record reveals that the trial court's decision was legally correct and factually supported." Id.

There is no error.

In this opinion the other judges concurred.