[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is a petition brought by the Commissioner of Children and Families seeking to terminate parental rights of respondents, Diane and James, in their children Karissa age 9, January 29, 1984, and Latoya, age 8, born September 14, 1985.
The petitions to terminate parental rights were filed August 3, 1993, alleging that these children had been abandoned by both mother and father, that the children having previously been found to be neglected, the parents had failed to rehabilitate, and that the children had been denied by reason of acts of commission or omission by both parents necessary care, guidance or control, and seeking waiver of the one year requirement to the extent the said reasons for termination existed for less than one year.
At the time of filing these petitions, the whereabouts of both parents were unknown, and notice was made and found by publication. Neither parent personally appeared at any stage of the present proceedings, but their interests were represented by their respective attorneys who actively contested the matter on their behalf.
On September 21, 1993, the petitioner filed a Motion to Amend the petition to allege that mother has not had contact with the children since November 23, 1992, and father has not had contact with the children since December 1, 1992. This motion was granted by the court at trial on September 27, 1993.
Notice of said trial date was also published, and trial commenced on September 27 and concluded on October 1, 1993. All attorneys have filed briefs, with the petitioner and the attorney for the children arguing in favor of termination of parental rights and the attorneys for the mother and the father opposing CT Page 10818 termination.
After hearing the testimony and reviewing the exhibits and taking judicial notice of the prior social studies and status reports concerning these children, the court finds the facts as follows: The girls have six siblings. Their oldest half-sister is with her paternal relatives and their older sister and younger twin brothers are placed with their paternal grandmother. Parental rights have been terminated in their two younger sisters, one of whom has been adopted.
The mother Diane has a long history of substance abuse, treatment failures, and relapse. The girls were first removed from her care on April 6, 1988, at ages 4 and 2 1/2 when found by the police with their two younger sisters alone, unsupervised, dirty, inappropriately clothed and hungry. When found, mother made a suicide gesture and was hospitalized. The children were placed in foster care; these two girls were placed together.
After a period of incarceration and leaving a drug treatment program early, the mother returned to the community in January 1989. She visited with the children, enrolled in Adult Education and attended AA meetings until the premature birth of the twin boys on June 11, 1989. In September 1989, 4C's became involved in helping to support mother with the twins, but she had a relapse in March 1990, when they were also removed from her care after being left unsupervised. Mother then successfully completed the 90 day CADAC alcohol program at Connecticut Valley Hospital and continued with follow up care. The Department provided reunification services and the twin boys were returned to her care December 26, 1990.
After the birth of the twins, mother's visits with her four girls were sporadic. The Department stopped her visitation and filed petitions to terminate parental rights in April 1991. After both parents became involved through the efforts of New Haven Family Alliance, the petitions were withdrawn as to these girls. Parental rights were terminated in the younger sisters. Although their commitment was extended eighteen months on October 30, 1991 18 months to May 24, 1993, these girls were reunified with their parents and returned home November 27, 1991. Although certain concerns were raised about the children's care and mother's continued drug use, the commitment was revoked and the children were placed under protective supervision for 3 months on November 12, 1992, with a service agreement signed by father for the children CT Page 10819 to attend school.
On November 23, 1992, the mother was hospitalized after a stabbing incident. Her DCF social worker, Gail Patterson, testified that mother called her from the hospital looking for father, she was being discharged. On December 1, 1992, the worker made a home visit and found the girls alone. The mother had not come home after leaving the hospital and the father and twins were not there when the girls got home from school. The girls and the home were dirty and unkempt and without food. A 96-hour hold was invoked and the girls were placed together in foster care.
The father returned home later that day, claiming the mother was supposed to come to the home from the hospital to take care of the girls. He scuffled with the police, was arrested, and the twins were also removed from the home and placed in foster care with his mother. Since the paternal grandmother is presently caring for 3 of the children, she was and is unable to take in these girls also.
An order of temporary custody (OTC) was granted December 3, 1992. The father appeared at the OTC hearing on December 10, 1992, but has not appeared in court since. The mother has not contacted the Department since the November 30, 1992 telephone call to the social worker. On March 4, 1993, the court modified the prior disposition and the girls were again committed to the care of the Department.
Neither parent has inquired about or visited the girls since they were placed in foster care on December 1, 1992. The whereabouts of the parents were unknown at the time of the filing the termination petition in August 1993 through the dates of the hearing. Although mother's attorney had requested an in court review to have expectations set in July 1993, mother never appeared in court to pursue her claim. Her last contact with the girls was when she was hospitalized November 23, 1992, her last contact with the Department was her telephone call to the worker November 30, 1992, and her last contact with the New Haven Family Alliance worker was in April 1993, for assistance with welfare. An attempt then to get mother to visit the girls was unsuccessful. The Family Alliance worker's last contact with the father was in December 1992 visiting the boys at his mother's, but he left before the girls arrived to visit.
The court finds by clear and convincing evidence that the CT Page 10820 parents have abandoned these children in that they have totally failed to maintain a reasonable degree of interest concern or responsibility as to their welfare In re Kezia M and cases cited therein, 33 Conn. App. 12, 17-19 (1993).
Although these conditions have existed for slightly less than a year, the court does not find it would serve any useful purpose to wait a week or a month for the parents to reappear. Even at their best, the parents' ability to care for their children and concern for their emotional and physical well-being was poor and inconsistent. The children are aware of their mother's drug usage and the drain it placed on the family resources, both emotional and financial. The older daughter resents that mother placed on her the burden of helping care for the younger children, even keeping her out of school to do so. Both girls have been disappointed by the parents' failure to maintain contact with them to the point of one being angry and the other not caring anymore. A waiver of the one year requirement at this point is de minimus and certainly in the best interests of the girls so that permanent plans can be made for their future. Conn. Gen. Stat. 17a-112 (c); In re Christine F., 6 Conn. App. 360, 371-72 (1993).
The court further finds that it has subject matter jurisdiction conferred by statute and that the petition sufficiently alleged and the evidence presented clearly establishes the necessary special circumstances to waive the one-year requirement. The amendments of Public Act 93-193 requiring an affidavit of attempts locate parents for making out a prima facie case for waiver do not apply to this case and do not affect the court's jurisdiction.
Conn. Gen. Stat. 17a-112(b) is also not void for vagueness in that it specifically defines "an extended period of time" as "not less than one year" It is for the court to determine as a factual matter, how long the circumstances existed and whether or not to waive the one year requirement under the "totality of circumstances surrounding the child." The statute is clear on its face and not subject to attack for vagueness.
The court also finds by clear and convincing evidence that, the children having previously been found to be neglected in 1988 and again in 1993, neither parent has achieved such a degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the girls, either one could assume a responsible position in the life of the child. CT Page 10821
The Department has been involved in providing intensive services to the parents and family for 5 years. During the first 3 years while the girls were in foster care, the father did not actively involve himself in reunification until New Haven Family Alliance became involved when the younger twin boys were returned home. Although involved in numerous treatment programs, the mother has never been able to overcome her substance abuse problems long enough to maintain a safe and secure home environment for her children. The period when the children were returned home was marked by inconsistent care and deteriorating conditions in the home and family. The father has never consistently maintained a home for the children and always deferred the caretaking role to his mother when the girls' mother was unavailable. The parents have been offered every service available to reunify and then keep this family together without any positive progress. At present, they are not even interested in trying. There is no basis to believe that either parent will ever be able to assume a responsible position in their girls' lives. In re Michael M., 29 Conn. App. 112
(1992).
Although the court does find that the mother's on-going substance abuse and the father's failure to protect the girls from neglect by their mother denied the girls the care and guidance necessary for their well-being, it is not these acts alone that compel termination of their parental rights. The parents failure to rehabilitate and abandonment of the girls provides the grounds for termination.
The court further finds that the parents are solely responsible for the loss of their children and have not been prevented in any way from maintaining a meaningful relationship with the girls. The Department has offered visitation, assistance with housing, family reunification services, assistance with obtaining treatment, and Family Alliance workers who also assisted with food, treatment, counseling, visitation, transportation, welfare benefits and family preservation. The Department bent over backwards in attempting to reunite this family and then in allowing them to remain in the home while conditions deteriorated, despite the best efforts of the social workers and New Haven Family Alliance to keep the family functioning.
The mother never consistently followed through with drug treatment or remained drug free as ordered by the court. Neither parent followed through with visitation and neither parent even CT Page 10822 attempted to contact their social worker or attorneys to show any interest in the children or advise them of their present whereabouts, in accordance with the prior expectations entered in this case. Since abandoning the girls to the State, neither parent has appeared in court or been available to have expectations set for reunification.
Karissa, age 9, has made it quite clear to her foster mother and social worker that she resents her parents and does not want to live with them again. Latoya, age 8, does not seem to care about her parents anymore and has transferred her affections to her foster parents.
As stated previously, and repeatedly, the parents have failed to even try to maintain contact with these children or their guardian, even though they both know how to reach the Department directly, through New Haven Family Alliance, or through the paternal grandmother who has 3 of their other children.
In sum, all of the relevant statutory criteria have been met and the court finds it in the best interest of said children to terminate respondents' parental rights based on abandonment and failure to rehabilitate and to waive the one year requirement. The Department of Children and Families is appointed statutory parent of each child.
Sequina, J.