[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The Department of Children and Families ("DCF") has filed a petition seeking to terminate the parental rights CT Page 12022 of Julie M. and Eric J. with respect to Kevin M., born on January 8, 1994. Kevin is presently living in a foster home in Windsor, Connecticut.
On January 12, 1994, Kevin was placed in foster care pursuant to a voluntary placement agreement with the mother.
Court proceedings were instituted pursuant to an Order of Temporary Custody application granted by the court on April 14, 1994, accompanied by a neglect petition.
On May 12, 1994, the court found that Kevin was neglected in that he had been abandoned by his parents and was being denied proper care and attention physically by his parents, and was uncared for in that he had specialized needs that neither parent could meet, and was homeless.
Trial on the Petition for Termination of Parental Rights, filed on September 9, 1994, was held on October 6, 1994. Notice of the filing of the termination petition, and a scheduled plea date of October 6, 1994, was published pursuant to court order in The Hartford Courant on September 15, 1994, at which time the whereabouts of the parents were unknown. An affidavit of diligent search for both parents, sworn to on September 9, 1994 by DCF Social Worker Kellena Nelson, filed on September 9, 1994, is part of the file and is noted by the Court. The petition sought termination of the parental rights of both parents on three grounds: (1) on the ground that the child has been abandoned by the mother and father in the sense that the parents failed to maintain a reasonable degree of interest, concern or responsibility as to the welfare of the child; (2) on the ground that the child has been found in a prior proceeding to have been neglected or uncared for and that the mother and father have failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the child, they could assume a responsible position in the life of the child; and (3) on the ground that there is no ongoing parent-child relationship with respect to the mother and the father which is defined as the relationship that ordinarily develops as a result of a parent having met on a continuing, day-to-day basis the physical, emotional, moral and educational needs of the child and to allow CT Page 12023 further time for the establishment or re-establishment of the parent-child relationship would be detrimental to the best interests of the child. With respect to both parents, the petition alleged that all three grounds have existed for less than one year but that the totality of the circumstances surrounding the child indicates that a waiver by the court of the one year requirement is necessary to promote the best interest of the child
The operative dates for this decision are as follows: Adjudication must be determined on the facts as of September 9, 1994, the date of the filing of the petition. Disposition must be determined on the facts as of October 6, 1994, the date of trial.
The court finds that it has jurisdiction in this case pursuant to General Statutes Sections 17a-112, 45a-716 and45a-717. Notice by publication, on September 15, 1994, has been effectuated in accordance with the requirements of General Statutes Section 45a-716, by publishing notice in a newspaper of general circulation in the place of the parents' last known address.
As noted, at trial, neither parent was in attendance; both of their whereabouts were unknown. Counsel for the child was present. At the request of the Attorney General, the court took judicial notice of the previous proceedings relating to the order of temporary custody and the proceedings relating to the previous neglect phase of the case, including all papers, petitions and affidavits filed in support of these proceedings, and a May 12, 1994 social study prepared in connection with the disposition of the case. The Social Study for Termination of Parental Rights was admitted into evidence as State's Exhibit A. The sole witness was Kellena Nelson, the DCF social worker assigned to the case.
The social worker affidavit in support of the application for the order of temporary custody, signed and sworn to by Ms. Nelson on April 14, 1994, was in all significant respects confirmed and supplemented by her in-court testimony under oath. The evidence offered at trial, interpreted in the light of the above-mentioned documents, supports the finding of the following facts. CT Page 12024
Kevin M., born on January 8, 1994, tested positive for cocaine metabolites and his mother was homeless at the time of his birth. Mother had sought no prenatal care, according to Ms. Nelson, whose affidavit indicated that Kevin had been born with head and hand tremors. According to the affidavit and testimony, due to mother's inability to care for her newborn son, lack of housing, lack of supplies for the baby, and her long-standing drug addiction, the mother signed a voluntary placement agreement four days after his birth. The evidence indicated that mother acknowledged to having used drugs, including cocaine, for 15 years and having failed in previous attempts to obtain successful treatment.
Ms. Nelson's testimony recapitulated her efforts to meet with mother on February 24, 1994, and March 4, 1994, On [on] both occasions, mother failed to show up for scheduled appointments. On March 8, 1994, Ms. Nelson met with mother at the foster home where Kevin had been placed. Ms. Nelson observed that mother did not know how to change her son's pampers or feed the child. After this visit was over, it was agreed that mother would visit the child every Thursday. On March 8, 1994, mother informed Ms. Nelson that she was homeless, lived from house to house, and was unable to care for her newborn son. She identified Kevin's father as one Eric J., but could not provide more information about him, such as date of birth, social security number, or where he could be reached. Ms. Nelson drafted a service agreement for mother, which was provided to her and signed by her, and which outlined what mother was expected to do to achieve reunification with her child. This signed agreement was not offered into evidence during the trial. Ms. Nelson explained to mother the importance of keeping her whereabouts known to DCF, attending in-patient drug treatment, and finding a place to live, explaining that failure to live up to these expectations could lead to DCF seeking to terminate her parental rights as to Kevin. Ms. Nelson also urged mother to seek treatment from Community Health Services, with whom mother said she had an appointment scheduled for March 11, 1994. On March 18, Ms. Nelson called Community Health Services and learned that the mother was not in treatment and had failed to show up for the March 11 appointment.
Ms. Nelson testified that mother had failed to keep CT Page 12025 her whereabouts known to DCF, failed to attend in-patient drug treatment, and failed to obtain a place to live, to the best of her knowledge, contrary to the provisions of the service agreement[.]
Ms. Nelson testified that she had made repeated efforts to locate mother through mother's daughter and a friend, but had been unsuccessful in doing so. In the summary of facts substantiating allegations of neglect filed on April 12, 1994, Ms. Nelson outlined her efforts to remain in contact with mother, including her contacts with mother's friend, Marlene M. Other than the brief March 8, 1994 meeting, mother has had no contact whatever with her son during his life to date. Mother's only contact with Ms. Nelson also occurred that day. Ms. Nelson also testified that due to the fragmentary nature of the information she had about the father, who had a common name, she could not identify him, and had had no contact with him, nor had the social worker previously assigned to the case. The father had not, to her knowledge, been at the hospital when the child was born. She had no knowledge that the father tried to contact the foster home.
Ms. Nelson testified that in February, 1994, she had talked with Marcya K., Kevin's 15-year-old sister, but that no relatives had come forth to provide care for Kevin. In the May 12, 1994 social study, it is noted that Marcya had not seen her mother in seven months, with one exception in April, 1994, when mother was very intoxicated, and that Marcya did not have a relationship with her mother because of her drug use. Marcya, herself placed with her paternal grandmother through probate court, noted that her mother did not come to see her or call her. Ms. Nelson said she could not locate any maternal relatives because mother had provided no relative addresses. Ms. Nelson testified that neither mother nor father had taken steps to communicate with Kevin in the foster home.
Ms. Nelson testified that Kevin's present home was a potentially adoptive home, and that the adoptive parents, who are attached to Kevin, want to adopt him. She testified that it was her opinion that his best interests would be served by granting the petition for termination of parental rights. CT Page 12026
I. Burden of Proof and Statutory Procedure
Our state courts have recognized that "it is both a fundamental right and the policy of this state to maintain the integrity of the family." In re Juvenile Appeal(83-CD), 189 Conn. 276 (1983). For recent discussions of the law relating to the termination of parental rights and attendant authority, see In re Jessica M., 217 Conn. 459
(1991), and In re Valerie D., 223 Conn. 492 (1992).
In a proceeding for termination of parental rights, the petitioner — here DCF — must prove a ground alleged in the petition, as of the date of the filing or the last amendment, by clear and convincing evidence. In re TheresaS., 196 Conn. 18 (1985). See also Connecticut General Statutes Section 17a-112(b), and Practice Book Section 1049. Only one ground need be established for the petition to be granted. In re Juvenile Appeal (84-BC), 194 Conn. 252
(1985).
Termination of parental rights is a two-stage process. The adjudicatory stage concerns whether or not the evidence presented establishes one of the statutory grounds alleged, as of the date the petition was filed or last amended, by a clear and convincing evidence standard. In re JuvenileAppeal (84-AB), 192 Conn. 254, 264 (1984). Establishment of one or more of the statutory grounds is a mandatory prerequisite to an inquiry regarding the best interests of the child.
II. Adjudication — Based on facts as of September 9, 1994.
Having carefully considered and evaluated the prior proceedings of which the court took judicial notice, the Social Study for Termination of Parental Rights admitted into evidence as State's Exhibit A, and the sworn testimony of Kellena Nelson, the court finds by clear and convincing evidence existing on the date of the filing of the petition that the child had been abandoned by the mother and the father in the sense that the parents failed to maintain a reasonable degree of interest, concern or responsibility as to the welfare of the child. The mother agreed to a voluntary placement shortly after Kevin's birth, and except for the limited contact on March 8, 1994, has had nothing CT Page 12027 whatever to do with the child. The father, whose identity and whereabouts were and are unknown, has had no contact at all with the child Kevin has been abandoned as that term is used in General Statutes Section 17a-112 and the cases.In re Juvenile Appeal (DN 9489), 183 Conn. 11 (1981).
The court also finds by clear and convincing evidence that the child has been found in a prior proceeding to have been neglected and uncared for and that the mother and father have failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the child, they could assume a responsible position in the life of the child. The child was adjudicated neglected and uncared for on May 12, 1994. The record reveals nothing from which the court could conclude that either parent has achieved any degree of rehabilitation at all between May 12, 1994 and the date the termination petition was filed on September 9, 1994. To the contrary, the record indicates that the mother has failed entirely to take steps to keep her whereabouts known to DCF, to obtain much-needed drug counselling, and to obtain the stability her child needs, and that father has never taken any steps to locate or establish any relationship with his son.
The court further finds by clear and convincing evidence that there is no ongoing parent-child relationship with respect to the father or mother, which is defined as the relationship that ordinarily develops as a result of a parent having met on a continuing, day-to-day basis the physical, emotional, moral and educational needs of the child. The court further finds, having considered the full record, that to allow further time for the establishment or re-establishment of the parent-child relationship would be detrimental to the best interests of the child. As the above recitation makes clear, neither parent can be said to have established any relationship at all with Kevin at any time.
The court further finds that the above-mentioned three grounds for termination have existed for less than one year with respect to both parents, but that the totality of the circumstances surrounding the child indicate that a waiver by the court of the one year requirement is necessary to promote the best interest of CT Page 12028 the child. In re Christine F., 6 Conn. App. 360, 371
(1986). Specifically, in light of the complete lack of interest manifested by his parents, the complete lack of contact with father and mother (with one small exception), the inability of mother to take steps toward her rehabilitation, including a failure to obtain treatment for a long-standing drug problem, and the lack of information about the parents' whereabouts, the court believes that unnecessary delay would only serve to hinder plans for Kevin's permanent placement from proceeding rapidly.
The court finds also that there is no proceeding pending in any other court affecting custody of the child.
IV. Disposition — Based on facts as of October 6, 1994, the date of trial.
Having found by clear and convincing evidence that the statutory grounds alleged by the petitioner for the termination of parental rights with respect to Kevin have been proven, the court must consider and make findings on each of the seven enumerated criteria of General Statutes Section 17a-112. All facts, up to and including the date of trial, must be considered in the dispositive phase. If the grounds are found, the court must then decide if termination is in the child's best interests.
1. Services Offered: The court finds that DCF offered services, including those described in paragraph X of Exhibit A, the Social Study for Termination of Parental Rights. Specifically, the court notes that the evidence indicates that mother was referred to the Visiting Nurse Association, Department of Social Services, the WIC program and Community Health Services for drug counselling, but that she did not avail herself of these services. The court finds that under the circumstances of this case, no services were offered to the father because his whereabouts were unknown.
2. Compliance With Child Welfare Act: The court finds that DCF made reasonable efforts given the situation and circumstances to unite the child and mother. Efforts to unite the child with father were not possible because his whereabouts were unknown. CT Page 12029
3. Court Orders: No court-ordered expectations were established in this case. However, the court finds that Ms. Nelson drafted a service agreement, which was reviewed with mother and signed by her on March 8, 1994, setting out expectations that needed to be fulfilled to effectuate reunification. Mother was unable to keep her whereabouts known to DCF, attend drug counselling meetings, and obtain some level of stability.
4. Significant Emotional Ties: There is no evidence that the child has developed significant emotional ties with either biological parent given the almost complete lack of contact. The court concludes from Ms. Nelson's testimony that the child has been, and is, in the process of developing significant ties with the foster parents, who, Ms. Nelson testified, want to adopt him.
5. Age of the Child: Kevin was born on January 8, 1994, and is therefore approximately 10 months old. With the exception of a portion of a single day, he has had no contact with either parent since his mother left the hospital shortly after his birth. As an infant, he requires stability of placement and continuity of care.
6. Parents' Efforts to Conform their Conduct to theBest Interests of the Child: The parents have made no efforts to conform their conduct to the best interests of the child.
7. Interference With Meaningful Relationships: There is no evidence before the court that either parent has been prevented from maintaining a meaningful relationship with the child by the unreasonable act or conduct of the other parent. While the mother's means are clearly very limited, the record does not support the conclusion that her limited means — as opposed to her other problems — have interfered with her relationship with her child.
Based on the foregoing findings, and upon consideration of all of the evidence in this case, the court concludes that it has been demonstrated by clear and convincing evidence that it is in the best interest of this child, Kevin M., to terminate the parental rights of Julie M. and Eric J. CT Page 12030
IV. Order
It is accordingly ordered that the parental rights of Julie M. and Eric J. as to Kevin M. be, and hereby are, terminated. The Commissioner of the Department of Children and Families is hereby appointed the statutory parent for the purpose of placing Kevin in a permanent home. A permanency plan shall be submitted within 90 days as required and thereafter in such form and at such intervals as this court may from time to time require, and a motion to review plan for terminated child shall be filed in accordance with federal law.
Douglas S. Lavine Judge, Superior Court