## IN RE CHEYENNE A.*
## (AC 18994)

Lavery, C. J., and Schaller and Mihalakos, Js.

Argued May 30—officially released August 1, 2000

---

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 79-3, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

*Norman A. Pattis*, for the appellants (respondents).

*Carolyn A. Signorelli*, assistant attorney general, with whom, on the brief, were *Richard Blumenthal*, attorney general, and *Susan T. Pearlman*, assistant attorney general, for the appellee (petitioner).

*Eugene P. Falco*, for the minor child.

*Opinion*

LAVERY, C. J. The respondent parents (respondents) appeal from the judgment of the trial court terminating their parental rights in their daughter, Cheyenne A. On appeal, the respondents claim (1) that the court improperly determined that a prima facie showing of unexplained injuries constitutes clear and convincing evidence of the cause of those injuries and was evidence sufficient to support the termination of their parental rights under General Statutes (Rev. to 1997) § 17a-112 (c) (3) (C),[1] and (2) that § 17a-112 violates their due

---

[1] General Statutes (Rev. to 1997) § 17a-112 (c), now (b), is applicable to all of the respondents' claims and provides: "The Superior Court, upon hearing and notice as provided in sections 45a-716 and 45a-717, may grant a petition filed pursuant to this section if it finds by clear and convincing evidence (1) that the Department of Children and Families has made reasonable efforts to locate the parent and to reunify the child with the parent, unless the court finds in this proceeding that the parent is unable or unwilling to benefit from reunification efforts provided such finding is not required if the court has determined at a hearing pursuant to subsection (b) of section 17a-110 that such efforts are not appropriate, (2) that termination is in the best interest of the child, and (3) that over an extended period of time,

process rights by permitting the state to terminate their parental rights absent a showing of clear and convincing evidence of child abuse. We affirm the judgment of the trial court.

The following procedural and historical facts are necessary for our resolution of this appeal. Cheyenne was born on December 18, 1996. The commissioner of children and families filed a neglect petition with respect to Cheyenne on February 7, 1997. The commissioner subsequently filed a coterminous petition for the termination of the respondents' parental rights on April 25, 1997. The coterminous petition alleged that Cheyenne has been denied by reason of an act or acts of commission or omission by the respondents the care, guidance

which except as provided in subsection (d) of this section shall not be less than one year, provided such time limit shall not apply to subparagraph (e) of this subsection: (A) The child has been abandoned by the parent in the sense that the parent has failed to maintain a reasonable degree of interest, concern or responsibility as to the welfare of the child; (B) the parent of a child who has been found by the Superior Court to have been neglected or uncared for in a prior proceeding has failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the child, such parent could assume a responsible position in the life of the child; (C) the child has been denied, by reason of an act or acts of parental commission or omission, the care, guidance or control necessary for his physical, educational, moral or emotional well-being. *Nonaccidental or inadequately explained serious physical injury to a child shall constitute prima facie evidence of acts of parental commission or omission sufficient for the termination of parental rights*; (D) There is no ongoing parent-child relationship, which means the relationship that ordinarily develops as a result of a parent having met on a day to day basis the physical, emotional, moral and educational needs of the child and to allow further time for the establishment or reestablishment of such parent-child relationship would be detrimental to the best interest of the child; or (E) the parent of a child under the age of seven years who is neglected or uncared for, has failed, is unable or is unwilling to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable period of time, considering the age and needs of the child, such parent could assume a responsible position in the life of the child and such parent's parental rights of another child were previously terminated pursuant to a petition filed by the Commissioner of Children and Families." (Emphasis added.)

or control necessary to her physical, educational, moral or emotional well-being pursuant to § 17a-112 (c) (3) (C) and that pursuant to § 17a-112 (d),[2] the required one year waiting period before termination could occur should be waived as necessary under the totality of the circumstances surrounding the child to promote her best interest.

The court held trial on numerous days in July through October, 1998.[3] The court found that in February, 1997, Cheyenne was diagnosed as having seventeen fractures to her posterior rib cage, which were in various stages of healing. According to the testimony of her pediatrician, an emergency room physician and a pediatrician specializing in child abuse, the fractures were caused, mechanically, by severe, sustained compression, which usually occurs when a baby is shaken. The diagnosis was highly suggestive of child abuse. The respondents did not report that Cheyenne had sustained any trauma of a magnitude sufficient to cause her injuries, and brittle bone disease was ruled out as a cause. Medical personnel considered inadequate the explanations offered by the respondents, such as the child's having rolled off a couch. After several months of reflection, advice and reconsideration, the respondents postulated

---

[2] General Statutes (Rev. to 1997) § 17a-112 (d) provides in relevant part: "The court may waive the requirement that one year expire prior to the termination of parental rights if it finds: (1) From the totality of the circumstances surrounding the child that such a waiver is necessary to promote the best interest of the child. . . ."

[3] The neglect and coterminous petitions concerning Cheyenne were consolidated for trial with a neglect petition, filed February 4, 1997, concerning her older half-sister and an order of temporary custody and a neglect petition, filed September 29, 1998, concerning her recently born younger brother. All three cases centered on the serious, life threatening injuries Cheyenne had sustained during her first six weeks of life. There was no evidence of actual abuse to either the older half-sister or younger brother. The court found that Cheyenne's older half-sister was not neglected, but that her younger brother was neglected and ordered protective services for him for a period of one year subject to certain conditions.

that Cheyenne had suffered her injuries at times she was being cared for by her grandmother.

At the conclusion of trial, the court concluded that under the totality of circumstances, considering the best interest of the child, the one year requirement of § 17a-112 (d) should be waived. See footnote 2. Although the respondents had raised the specter that someone other than they was the perpetrator of Cheyenne's injuries, the court was satisfied by clear and convincing evidence that Cheyenne had been denied by reason of an act or acts of commission or omission of the respondents, the care, guidance or control necessary for her physical well being in that the child had sustained serious, life threatening injuries that were not adequately explained. The court also made the requisite factual findings pursuant to § 17a-112 (e),[4] now (d), and

---

[4] The respondents do not challenge any of the findings the court made pursuant to General Statutes § 17a-112 (e), now (d), which provides: "Except in the case where termination is based on consent, in determining whether to terminate parental rights under this section, the court shall consider and shall make written findings regarding: (1) The timeliness, nature and extent of services offered, provided and made available to the parent and the child by an agency to facilitate the reunion of the child with the parent; (2) whether the Department of Children and Families has made reasonable efforts to reunite the family pursuant to the federal Adoption Assistance and Child Welfare Act of 1980, as amended; (3) the terms of any applicable court order entered into and agreed upon by any individual or agency and the parent, and the extent to which all parties have fulfilled their obligations under such order; (4) the feelings and emotional ties of the child with respect to his parents, any guardian of his person and any person who has exercised physical care, custody or control of the child for at least one year and with whom the child has developed significant emotional ties; (5) the age of the child; (6) the efforts the parent has made to adjust his circumstances, conduct, or conditions to make it in the best interest of the child to return him to his home in the foreseeable future, including, but not limited to, (A) the extent to which the parent has maintained contact with the child as part of an effort to reunite the child with the parent, provided the court may give weight to incidental visitations, communications or contributions and (B) the maintenance of regular contact or communication with the guardian or other custodian of the child; and (7) the extent to which a parent has been prevented from maintaining a meaningful relationship with the child by the unreasonable act or conduct of the other parent of the

concluded that it was in the best interest of Cheyenne to terminate the parental rights of the respondents. The respondents appealed.

I

On appeal, the respondents claim first that the court improperly determined that a prima facie showing of unexplained injuries constitutes clear and convincing evidence of the cause of the injuries and is evidence sufficient to support termination of parental rights under § 17a-112 (c) (3) (C). We are not persuaded.

"The standard for review on appeal [from a termination of parental rights] is whether the challenged findings are clearly erroneous. *In re Luis C.*, [210 Conn. 157, 166, 554 A.2d 722 (1989)]; *In re Christina V.*, 38 Conn. App. 214, 223, 660 A.2d 863 (1995). The determinations reached by the trial court that the evidence is clear and convincing will be disturbed only if [any challenged] finding is not supported by the evidence and [is], in light of the evidence in the whole record, clearly erroneous. *Pandolphe's Auto Parts, Inc.* v. *Manchester*, 181 Conn. 217, 221–22, 435 A.2d 24 (1980). *In re Juvenile Appeal (84-3)*, 1 Conn. App. 463, 478, 473 A.2d 795, cert. denied, 193 Conn. 802, 474 A.2d 1259 (1984). *In re Luis C.*, supra, 166.

"On appeal, our function is to determine whether the trial court's conclusion was legally correct and factually supported. *In re Michael M.*, [29 Conn. App. 112, 121, 614 A.2d 832 (1992)]; *In re Megan M.*, 24 Conn. App. 338, 342, 588 A.2d 239 (1991); *In re Davon M.*, 16 Conn. App. 693, 696, 548 A.2d 1350 (1988). We do not examine the record to determine whether the trier of fact could have reached a conclusion other than the one reached; *Pandolphe's Auto Parts, Inc.* v. *Manchester*, [supra, 181

child, or the unreasonable act of any other person or by the economic circumstances of the parent."

Conn. 222]; nor do we retry the case or pass upon the credibility of the witnesses. *In re Christine F.*, 6 Conn. App. 360, 366–67, 505 A.2d 734, cert. denied, 199 Conn. 808, 809, 508 A.2d 769, 770 (1986). Rather, on review by this court every reasonable presumption is made in favor of the trial court's ruling. *State* v. *Jones*, 205 Conn. 638, 660, 534 A.2d 1199 (1987). *In re Kezia M.*, 33 Conn. App. 12, [17], 632 A.2d 1122, cert. denied, 228 Conn. 915, 636 A.2d 847 (1993); *In re Felicia D.*, 35 Conn. App. 490, 499, 646 A.2d 862, cert. denied, 231 Conn. 931, 649 A.2d 253 (1994). . . . *In re Eden F.*, 48 Conn. App. 290, 309, 710 A.2d 771 [(1998), rev'd on other grounds, 250 Conn. 674, 738 A.2d 141 (1999)]." (Internal quotation marks omitted.) *In re Danuael D.*, 51 Conn. App. 829, 835–36, 724 A.2d 546 (1999).

The essence of the respondents' claim is that the language of § 17a-112 (c) (3) (C), stating that "[n]onaccidental or inadequately explained serious physical injury to a child shall constitute prima facie evidence of acts of parental commission or omission sufficient for the termination of parental rights" applies to the state's burden of production and not to its burden of persuasion. The respondents argue that the statute permits the termination of parental rights on less than clear and convincing evidence in the presence of serious unexplained injuries. The respondents' argument is misguided.

General Statutes (Rev. to 1997) § 17a-112 (c) provides in relevant part that the court may grant a petition to terminate parental rights "if it finds by clear and convincing evidence . . . (3) that . . . (C) the child has been denied, by reason of an act or acts or parental commission or omission, the care, guidance or control necessary for his physical . . . well-being. Nonaccidental or inadequately explained serious physical injury to a child shall constitute prima facie evidence of acts of parental commission or omission sufficient for the

termination of parental rights . . . ." Here, the court stated in its memorandum of decision that it was satisfied, by clear and convincing evidence, that Cheyenne had been "denied by reason of an act or acts of commission or omission of the parents, the care, guidance or control necessary for her physical well-being in that Cheyenne has sustained serious, life-threatening injuries that have been inadequately explained."

"The phrase prima facie evidence means evidence which, if credited, is sufficient to establish the fact or facts which it is adduced to prove." (Internal quotation marks omitted.) *State* v. *Watson,* 165 Conn. 577, 595–96, 345 A.2d 532 (1973), cert. denied, 416 U.S. 960, 94 S. Ct. 1977, 40 L. Ed. 2d 311 (1974). This court has previously dealt with a similar challenge to the termination of parental rights in *In re Juvenile Appeal (85-2),* 3 Conn. App. 184, 485 A.2d 1362 (1985), in which we stated, "The respondent's final claim is that the court erred in finding that the petitioner proved by clear and convincing evidence that the children had been denied by reason of acts of parental commission or omission the care necessary for their general well-being . . . . The essence of the respondent's claim in this regard is that direct evidence as to any acts of commission or omission was lacking and that the judgment rested upon speculation and inference.

"While it is true that evidence of the respondent's acts of omission was largely circumstantial, that evidence was sufficient. The law does not distinguish between direct and circumstantial evidence as far as probative force is concerned. *State* v. *Cimino,* 194 Conn. 210, 211, 478 A.2d 1005 (1984). The standard of clear and convincing proof used in this case denotes a degree of belief that lies between the belief that is required to find the truth or existence of the issuable fact in an ordinary civil action and the belief that is required to find guilt in a criminal prosecution. *Dacey*

v. *Connecticut Bar Assn.*, 170 Conn. 520, 536–37, 368 A.2d 125 (1976). In a criminal case, the jury may draw reasonable, logical inferences from the facts proven as long as they do not resort to speculation and conjecture. *State* v. *Festo*, 181 Conn. 254, 259, 435 A.2d 38 (1980). In a case involving substantial circumstantial evidence, the cumulative impact of a multitude of facts, and not any one fact, may establish guilt. *State* v. *Bember*, 183 Conn. 394, 397, 439 A.2d 387 (1981). Insofar as circumstantial evidence can be and is routinely used to meet the higher standard of proof in a criminal prosecution, so can it be used in a case such as this where the applicable standard is that of clear and convincing proof." (Internal quotation marks omitted.) *In re Juvenile Appeal (85-2)*, supra, 3 Conn. App. 192–93.

In this case, as previously set forth in detail, the court found by clear and convincing evidence that Cheyenne suffered severe physical injuries in the form of seventeen rib fractures that occurred at different times. The respondents could not explain her injuries and, after a period of time and reflection, attributed them to Cheyenne's grandmother. "It is not our function to retry the case or to pass upon the credibility of the witnesses; *Johnson* v. *Flammia*, 169 Conn. 491, 497, 363 A.2d 1048 (1975) . . . ." *In re Juvenile Appeal* (85-2), supra, 3 Conn. App. 193. On the basis of our review of the record, we conclude that the evidence is sufficient to support the court's conclusion that the respondents, by acts of omission or commission, denied Cheyenne the care necessary for her physical well-being.

II

The respondents' second claim is that § 17a-112 violates their due process rights by permitting the state to terminate their parental rights absent a showing of clear and convincing evidence of child abuse. We decline to review this claim as the respondents did not distinctly

raise it in the trial court; see Practice Book § 60-5; *In re James L.*, 55 Conn. App. 336, 348, 738 A.2d 750, cert. denied, 252 Conn. 907, 743 A.2d 618 (1999); did not request *Golding*[5] review on appeal; see *State v. Laracuente*, 57 Conn. App. 91, 94, 749 A.2d 34, cert. denied, 253 Conn. 923, 754 A.2d 798 (2000); and provided no constitutional analysis of their claim in their brief. See *In re Adelina G.*, 56 Conn. App. 40, 43, 740 A.2d 920 (1999) (analysis rather than mere abstract assertion required).

The judgment is affirmed.

In this opinion the other judges concurred.

---

[5] See *State v. Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989). At oral argument, the respondents claimed during rebuttal that *Golding* review is warranted for claims of a constitutional nature. "The fact that the defendant has argued this claim is one of constitutional magnitude does not, alone, satisfy the requirements of *Golding*. The defendant's failure to address the four prongs of *Golding* amounts to an inadequate briefing of the issue and results in the unpreserved claim being deemed abandoned. See [*State v. Barnett*, 53 Conn. App. 581, 598, 734 A.2d 991, cert. denied, 250 Conn. 918, 736 A.2d 659 (1999)]; *State v. Rodriguez*, 44 Conn. App. 818, 823, 692 A.2d 846, cert. denied, 242 Conn. 902, 697 A.2d 363 (1997)." *State v. Laracuente*, 57 Conn. App. 91, 94, 749 A.2d 34, cert. denied, 253 Conn. 923, 754 A.2d 798 (2000).